UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Coastal Capital, LLC

v.                                  Case No. 24-cv-59-SM-AJ
                                    Opinion No. 2025 DNH 016
Steven Savage and
Virginia Savage

O R D E R

After their company, Sky-Skan, Inc., experienced financial difficulty and filed for bankruptcy protection, Steven and Virginia Savage filed their own bankruptcy petition in the United States Bankruptcy Court, District of New Hampshire. In re Savage, 17-bk-11760 (Bankr. N.H.). One of the Savages' creditors, Coastal Capital, LLC, filed an adversary proceeding, In re Savage, 21-bk-01006-KB (Bankr. N.H.), seeking to deny them discharges under 11 U.S.C. § 727 and to except the Savages' obligations to Coastal from discharge under 11 U.S.C. § 523. Following a two-day trial, the bankruptcy court ruled in favor of the Savages on five of Coastal's claims but concluded under § 727(a)(5) that the Savages were not entitled to discharges. The Savages appeal the judgment entered in the adversary proceeding on grounds that the court made legal and factual errors in arriving at that result.

For the reasons discussed below, the bankruptcy court's decisions are affirmed.

## Standard of Review

Federal district courts have jurisdiction to decide appeals from final judgments, orders, and decrees of the bankruptcy court.  28 U.S.C. § 158(a); In re Shove, 83 F.4th 102, 108 (1st Cir. 2023).  The court reviews factual findings for clear error, legal conclusions de novo, and discretionary decisions for abuse of discretion.  Id.; UMB Bank, N.A. v. MacMillin Co., LLC, 654 B.R. 824, 827 (D.N.H. 2023), appeal dismissed sub nom. In re Prospect-Woodward Home, No. 23-2001, 2024 WL 2805540 (1st Cir. May 3, 2024); In re Hoover, 828 F.3d 5, 8 (1st Cir. 2016).  "Under the clear error standard, [the court] defer[s] to the bankruptcy court's factual findings unless, on the whole of the record, [the court] form[s] a strong, unyielding belief that a mistake has been made."  In re Montreal, Maine & Atl. Ry., Ltd., 956 F.3d 1, 6 (1st Cir. 2020) (internal quotation marks omitted).  "Abuse of discretion occurs when the trial court ignores a material factor deserving significant weight, relies upon an improper factor, or assesses all proper and no improper factors, but makes a serious mistake in weighing them."  Torres Lopez v. Consejo de Titulares del Condominio Carolina Ct. Apts. (In re Torres Lopez), 405 B.R. 24, 30 (B.A.P. 1st Cir. 2009).

Background[1]

Steven Savage was the president and sole shareholder of Sky-Skan, Inc., a company that designed, installed, and maintained equipment used in planetariums.  Virgina Savage, Steven's wife, was the vice president and bookkeeper for the company.  The Savages operated Sky-Skan from a commercial condominium in Nashua, New Hampshire, that Steven owned.

In July of 2011, Sky-Skan obtained a $900,000 line of credit from Bank of America.  The loan agreement gave Bank of America a security interest in certain categories of Sky-Skan's property, and the Savages personally guaranteed the loan.  To secure his personal guaranty, Steven gave Bank of America a mortgage on the Nashua condominium.  Bank of America assigned the Sky-Skan loan to Coastal Capital, LLC, in April of 2017.

By that time, Sky-Skan was having financial difficulty, and the Savages were using their personal credit and debit cards to fund Sky-Skan's business operations.  Sky-Skan and the Savages defaulted on their obligations under the loan held by Coastal. Coastal sought a restraining order in state court to prevent

---

[1] The court will cite the record provided in document number 7-1 as "Appx."

The background is summarized from the bankruptcy court's trial and reconsideration decisions in the adversary proceeding, Doc. no. 7-1, Appx. 178-204 and Appx. 206-216, and the parties' factual statements to the extent they are supported by the record.

Sky-Skan and the Savages from moving, concealing, encumbering,
wasting, or altering the collateral for the loan and their
guaranties.  The state court issued the requested orders in
August of 2017 and allowed Coastal to secure the collateral,
take possession of all bank accounts, and to conduct a secured
party sale of the collateral.  The court later found that
actions taken by Sky-Skan and the Savages were in contempt of
its orders and ordered them to pay Coastal's fees and costs.

Sky-Skan filed a voluntary Chapter 11 petition in the
bankruptcy court on November 1, 2017.  Sky-Skan's statement of
financial affairs disclosed that Sky-Skan transferred
$704,075.00 to the Savages to reimburse them for the funds they
provided to Sky-Skan during the year before Sky-Skan filed for
bankruptcy.  On December 20, 2017, the Savages filed their own
chapter 11 bankruptcy petition.  The Savages' statement of
financial affairs did not show the $704,075.00 transferred to
them by Sky-Skan.  The Savages owed Coastal $1,000,000.00 at the
time of filing.  They owed additional amounts to the Internal
Revenue Service.

The Savages' case was converted to a chapter 7 proceeding
on November 12, 2020.  Coastal filed an adversary proceeding
against the Savages on February 8, 2021, objecting to their
bankruptcy discharges and the dischargeability of the debt owed
to Coastal.  Coastal brought six claims in the adversary

4

proceeding, objecting to discharge under 11 U.S.C. §§
727(a)(2)(A), 727(a)(4)(A), 727(a)(5), and 727(a)(7), and
objecting to dischargeability under 11 U.S.C. § 523(a)(4) and
§ 523(a)(6).  The court narrowed the claims on summary judgment
leaving Counts I-III and parts of Counts IV-VI for trial.

The bankruptcy court held a two-day trial.  Steven and
Virginia Savage were the only witnesses.  The court found in
favor of the Savages on Counts I, II, IV, V, and VI.  On Count
III, however, in which Coastal challenged the Savages' discharge
under § 727(a)(5), the court found in favor of Coastal.  The
court denied the Savages discharges under § 727(a)(5), and
judgment entered on November 28, 2023.

The Savages moved for reconsideration under Federal Rule of
Civil Procedure 59(e), made applicable to a bankruptcy
proceeding under Federal Rule of Bankruptcy Procedure 9023, and
for relief under Rule 60, made applicable under Bankruptcy Rule
9024.  Following a hearing on the motion, the court concluded
that the Savages provided no grounds for reconsideration under
Rule 59(e).  With respect to relief under Rule 60, the court
noted that the Savages relied on Rule 60(b)(3), pertaining to a
party's misconduct, and Rule 60(b)(6), the catchall provision.
The court found that the Savages' arguments on misconduct were
inconsistent and that they had not shown any misconduct by
Coastal.  The court also rejected the Savages' new theory under

Rule 60(b)(6) that the court should have considered the amounts listed on their Schedule J filed in the bankruptcy case to find that more of the missing money ($44,968.79) was explained. The court concluded that the Savages provided no grounds for relief under Rule 60(b)(6) because it was the Savages' burden to explain where the missing funds had gone, because the Savages did not raise Schedule J until the post judgment motion for reconsideration, and because Schedule J did not provide the required explanation. The Savages then sought review in this court of the bankruptcy court's decision to deny them discharges under § 727(a)(5).

## Discussion

"The court shall grant the debtor a discharge, unless – the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." § 727(a)(5); see also In re Simmons, 810 F.3d 852, 859 (1st Cir. 2016) ("Section 727(a)(5) authorizes the bankruptcy court to deny a discharge when a debtor has experienced a loss of assets or some other deficiency that the debtor cannot satisfactorily explain."). Courts address claims under § 727(a)(5) in a burden-shifting framework. Id., at 860. The party seeking to deny the debtor discharge must show "that

6

the debtor has not accounted for previously owned assets or previously earned income." Id.  If that showing is made, the debtor must explain the deficiency, and that explanation "must be supported by at least some corroboration and it must be sufficient to eliminate the need for any speculation as to what happened to all of the assets." Id. (internal quotation marks omitted).

The Savages raise five issues in support of their appeal of the bankruptcy court's decisions.  First, they challenge the bankruptcy court's calculation of the amount of the unaccounted-for missing money.  Second, they contend that the amount of unaccounted-for money was not a substantial asset within the meaning of § 727(a)(5).  Third, the Savages contend that the bankruptcy court erred in finding that they did not account for part of the missing money, and fourth, alternatively, that the bankruptcy court erred in not finding that Coastal prevented them from making the necessary showing by withholding and destroying the supporting documentation.  Fifth, the Savages contend that the bankruptcy court erred in denying their discharges entirely rather than limiting the denial to the amount of unaccounted-for money.  Coastal opposes all grounds that the Savages raise.

A.  <u>Calculation of the Missing Money</u>

The bankruptcy court calculated the missing money as follows.  Sky-Skan transferred $704,075.27 of the Coastal loan to the Savages, but the Savages no longer had that money at the time of the bankruptcy.  The bankruptcy court found that the Savages provided explanations for $684,599.42 of the $704,075.27, but they could not explain what happened to the remaining $19,475.85.

In addition, the court further scrutinized $89,500.00 of the money received from Sky-Skan, which the Savages explained was rent for the commercial condominium where the Savages operated Sky-Skan, and was used to pay the mortgage on the condominium and personal expenses.  The court found that the Savages did not use all of Sky-Skan's rental payments to pay the condominium mortgage, leaving $15,151.29 unaccounted for, and that $22,026,36 was not accounted for as personal living expenses.  The bankruptcy court found that the missing money totaled $56,653.50.

On appeal, the Savages challenge the bankruptcy court's calculation on grounds that the court improperly allocated the burden of proof (to explain missing money) to them rather than

Coastal and failed to consider the Schedule J amounts pertaining to living expenses.[2]

### 1. Burdens

The Savages argue that it was "Coastal's burden to prove that a substantial asset was not accounted for, and so it was Coastal's burden to establish the total amount of the unaccounted-for funds." Doc. no. 7, at 30. They contend that the bankruptcy court made a clearly erroneous factual error in finding that Coastal met its burden, and that error resulted in erroneously shifting the burden to the Savages to account for the missing money. The Savages misunderstand the burden-shifting framework under § 727(a)(5).

The party challenging discharge under § 727(a)(5) "has the initial burden of producing some evidence that the debtor no longer has assets which he previously owned." In re Fustolo, 597 B.R. 1, 64 (Bankr. Mass. 2019) (internal quotation marks omitted). The missing asset or assets must be "substantial" to satisfy the plaintiff's initial burden. In re Brien, 208 B.R. 255, 258 (B.A.B. 1st Cir. 1999); see also In re McDonald, 29 F.4th 817, 822 (6th Cir. 2022) (holding that the missing assets

---

[2] The Savages do not challenge the bankruptcy court's arithmetic as to the amount of unaccounted-for missing money.

for the plaintiff's initial burden must be "substantial and
identifiable").  If the creditor meets the burden of showing
that the debtor no longer has assets that he previously owned,
the debtor must "provide a satisfactory explanation for the loss
or deficiency of the asset." Fustolo, 597 B.R. at 64.  "Section
727(a)(5) is broadly drawn and gives the bankruptcy court broad
power to decline to grant a discharge in bankruptcy when the
debtor does not adequately explain a shortage, loss, or
disappearance of assets." In re Aoki, 323 B.R. 803, 817 (B.A.P.
1st Cir. 2005).

The Savages contend that Coastal did not meet its initial
burden of proving that substantial assets were missing and, for
that reason, the bankruptcy court erred in putting the burden on
them to account for missing assets.  The bankruptcy court found
(and it appears to be undisputed) that Sky-Skan transferred
$704,075.27 to the Savages, which was listed on Sky-Skan's
statement of financial affairs filed in its bankruptcy
proceeding.  Steven Savage signed that document under pains and
penalties of perjury.  It also appears to be undisputed that the
Savages did not have that money when they filed their bankruptcy
petition; that money was not included in the Savages' statement
of financial affairs filed in their personal bankruptcy case.
Based on those circumstances, Coastal proved that before they
filed for bankruptcy protection, the Savages had identifiable

and substantial assets, $704,075.27, and that they no longer had those assets at the time of filing.  That proof shifted the burden to the Savages to provide an explanation for what happened to the substantial sum transferred from Sky-Skan.  The Savages have not shown that the bankruptcy court erred in shifting the burden to them to account for the missing money.

   2. Schedule J

   The Savages argue that the amount the bankruptcy court found was missing and unaccounted for is incorrect because it does not include the amounts they listed on Schedule J filed in the bankruptcy case to show their household expenses.[3]  They contend that Schedule J shows $77,815.29 in household expenses that would account for all but $11,684.71 of the unaccounted-for money.  They assert that because it was Coastal's burden to show that the Savages did not account for the missing money and Coastal did not challenge Schedule J, they can rely on that document to show that the missing amount is $11,684.71.  As is discussed above, it was not Coastal's burden to prove what the Savages did with the missing money.  In addition, as the

_____

   [3] Schedule J lists the debtors' expenses in response to certain questions and categories as of the petition date.  In re Rudler, 576 F.3d 37, 47 (1st Cir. 2009).  The Savages' Schedule J reflects expenses as of December 20, 2017, when the petition was filed.  Appx. 85-88.

bankruptcy court noted, even under the Savages' theory, they still did not account for $11,815.29, which would support the bankruptcy court's decision to deny them discharges.

In addition, the Savages first raised the argument that Schedule J would provide an explanation for some of the missing money in their post judgment motion for reconsideration, citing Federal Rule of Civil Procedure 60(b)(6).  Rule 60(b)(6) provides relief from judgment when extraordinary circumstances justify reopening the case.  Kemp v. United States, 596 U.S. 528, 533 (2022).  Rule 60(b), however, "is available only when Rules 60(b)(1) through (b)(5) are inapplicable."  Id.; accord Quinones v. Frequency Therapeutics, Inc., 347 F.R.D. 560, 566 (D. Mass. 2024).  A decision on a Rule 60(b)(6) motion is reviewed for an abuse of discretion.  Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992).

The Savages point to no extraordinary circumstances that might justify reopening the adversary proceeding to consider Schedule J.  They state only that they did not introduce Schedule J during trial because "they had limited trial time to get through thousands of pages of accounting records to show how they used the majority of the funds."  Doc. no. 7, at 30.  They do not explain why trial time was limited or cite a court order that limited the time for presenting their case.  Further,

Schedule J was readily available to them, having been filed in their bankruptcy case.

It appears that the Savages, who are represented by competent counsel, made the strategic choice not to introduce Schedule J to support their explanation for the missing money. That choice, which resulted in failing to introduce evidence that the Savages now believe would be material, might fit under Rule 60(b)(1) as possibly a mistake or excusable neglect.  See Kemp, 596 U.S. at 533-39.  The Savages, however, relied on Rule 60(b)(6) and cannot now seek relief under Rule 60(b)(1) on appeal.  Id. at 533.

The bankruptcy court did not abuse its discretion in rejecting the Savages' post-trial theory that Schedule J would provide the needed explanation for missing money.  The Savages have shown no error in the bankruptcy court's calculation of the missing and unaccounted-for money.

B.  Substantial Asset

The Savages assert that their unaccounted-for missing money, $56,653.50 as calculated by the bankruptcy court, or $11,815.29 as calculated by the Savages, was not sufficiently substantial to warrant denying them discharges under 727(a)(5). In their reply, they argue that § 727(a)(5) is limited to

unaccounted-for assets that "cause the Debtors to be unable to satisfy their liabilities."  Doc. no. 11, at 5.

Section 727(a)(5) requires a debtor to account for "<u>any</u> loss or deficiency of assets to meet the debtor's liabilities." (Emphasis added.)  The statutory language does not require that unaccounted-for amounts be so substantial that, if accounted for, the debtor would be able to fully satisfy his or her liabilities.[4]  Therefore, the plain meaning of § 727(a)(5) does not support the Savages' strained interpretation.

The Savages quote <u>In re Tully</u>, 818 F.2d 106, 110 (1st Cir. 1987), to establish that the unaccounted-for missing money must be "real and substantial."  In that case, however, the court was addressing a different section, § 727(a)(4), under which "the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact."  <u>Id.</u>  In considering whether that burden was met, the court stated:  "'The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'" (quoting <u>Dilworth v. Boothe</u>, 69 F.2d 621, 624

---

[4] The Savages argue that because they owed so much to Coastal, the unaccounted-for money did not make any difference in their ability to satisfy their liabilities.  Of course, some repayment is better than no repayment, particularly from the point of view of the creditor.  The Savages cite no authority to support their interpretation of § 727(a)(5), and the court finds that theory unpersuasive.

(5th Cir. 1934)).  Section 727(a)(5) does not require proof of

knowingly and fraudulently making a false oath, or materiality,

but instead focuses on the sufficiency of the explanation for

missing assets.[5]  The Savages have not shown that unaccounted-for

missing money must be "real and substantial" to support denial

of discharge under § 727(a)(5).

The Savages also argue that a requirement exists that "the

lost asset be of 'substantial value relative to the debtors'

liabilities'" before they will be denied discharges.  Doc. 7, at

31 (quoting In re McDonald, 29 F.4th at 823).  They assert that

the missing assets are not substantial relative to their total

debt of more than $2 million.  For that reason, they contend,

the bankruptcy court erred in denying discharges based on the

amount of the missing and unaccounted-for money.

In that section of McDonald quoted by the Savages, the

issue was not whether a missing asset must be substantial to

support denial of discharge under § 727(a)(5).  Instead, the

court addressed a different question:  the look-back period for

identifying debtors' missing assets.  Id. at 822.  The trustee

pointed to a loan and a line of credit as lost assets, but the

---

[5] The bankruptcy court considered Coastal's request to deny
discharge under § 727(a)(4) in this case and rejected it,
concluding that Coastal had not shown that the Savages knowingly
and fraudulently withheld information from their creditors or
the court.  Appx. 191.

debtor argued that he acquired those assets too far before the time he filed the petition, i.e. too far back, to be counted for purposes of § 727(a)(5).  Id.  The court noted that § 727(a)(5) does not have a specific look-back period, as other sections of § 727(a) have, but also noted that for purposes of the sections with a look-back period, "the existence of lost assets of substantial value relative to debtors' liabilities often warrants the extension of such two-year period."  Id. at 823. Therefore, the court in McDonald did not hold, as the Savages represent, that only unaccounted-for missing money that is substantial in relation to the entire debt supports discharge denial under § 727(a)(5).  The misquote from McDonald does not establish that rule or show any error by the bankruptcy court.

As the Savages concede, whether to deny a discharge under § 727(a)(5) is a matter left to the bankruptcy court's discretion, which turns on the particular circumstances presented.  The Savages have not shown any circumstances suggesting that the thousands of dollars of missing and unaccounted-for money was insubstantial or that the bankruptcy court's exercise of discretion was in any way objectionable. See, e.g., Fustolo, 597 B.R. at 66 (denying discharge under § 727(a) when debtor could not explain $29,981.00 of $449,518.47

and finding that "this amount of unaccounted for cash is not
insubstantial under any definition").[6]

Therefore, the Savages have not shown error or an abuse of
discretion by the bankruptcy court based on a theory that the
unaccounted-for missing money was not substantial.


C.  The Savages' Explanations

The Savages contend that the bankruptcy court erred in
finding that they did not satisfactorily account for $56,653.50
of the missing money.  The court found that the Savages were
able to provide documentary evidence to show the disposition of
some of the missing money and credited the Savages' testimony to
explain certain additional amounts.  The court did not find
adequate explanation for the remaining amounts.

Under § 727(a)(5), "once the plaintiff has established the
loss of an asset, it is up to the debtor to provide a
satisfactory explanation for the loss or deficiency of the
asset."  In re Aoki, 323 B.R. 803, 817 (B.A.P. 1st Cir. 2005).
To be satisfactory, "the debtor's explanation "must be supported
by at least some corroboration" and "must be sufficient to

---

[6] The Savages argue that the court should disregard the
holding in Fustolo as an outlier.  That decision, however,
remains good law in the First Circuit, and while it is not
precedential, it is persuasive.

eliminate the need for any speculation as to what happened to all of the assets." Id.; accord In re McNamara, 620 B.R. 178, 189 (Bankr. D. Mass. 2020). For that reason, a debtor's "[v]ague or indefinite references, evidence or explanations, or an uncorroborated hodgepodge of financial transactions" do not satisfy the debtor's burden to provide a satisfactory explanation." Id. (internal quotation marks omitted). Aoki, 323 B.R. at 817; accord McNamara, 620 B.R. at 189 (Bankr. D. Mass. 2020); see also Centennial Bank v. Kane, No. 23-CV-02944-WHO, 2024 WL 1342600, at *4 (N.D. Cal. Mar. 29, 2024); Osuji v. Azie, No. 20-CV-1365 (PKC), 2021 WL 602699, at *6 (E.D.N.Y. Feb. 16, 2021); In re Elian, No. 10-49482 DHS, 2015 WL 5164796, at *5 (D.N.J. Sept. 2, 2015), aff'd, 659 F. App'x 104 (3d Cir. 2016). "What constitutes a 'satisfactory' explanation for § 727(a)(5) purposes is left to the discretion of the court." In re Park, 682 F. App'x 88, 93 (3d Cir. 2017) (additional internal quotation marks omitted).

The Savages argue that "overwhelming evidence" at trial showed that they satisfactorily accounted for the missing funds. Doc. no. 7, at 34. On appeal, however, they point to no record evidence tending to explain what happened to the unaccounted-for money. Instead, they merely assert that they spent time looking for financial records, that "Steven is not a sophisticated accountant," and that Virginia handled the bookkeeping but she

was not an accountant and had no formal training.  Id. at 37.
But they do not identify record evidence that accounts for the
missing money.  As such, the Savages have shown no abuse of
discretion by the bankruptcy court in finding that they did not
provide a satisfactory explanation for the unaccounted-for
money.


D.  Misconduct by Coastal

Alternatively, the Savages fault Coastal for their own
failure to provide evidence or a satisfactory explanation of
what happened to the unaccounted-for money.  They accuse Coastal
of refusing them access to documents and then destroying
documents that would have demonstrated what happened to the
money.  They ask for a spoliation of evidence inference as to
the evidentiary value of the unidentified destroyed documents.

The Savages first raised the issue of their access to
documents in Coastal's possession in the context of their motion
for reconsideration under Rule 60(b)(3).  "[T]he burden is on
the Rule 60 movant to demonstrate the existence of exceptional
circumstances justifying relief from judgment."  U-Nest
Holdings, Inc. v. Ascensus Coll. Sav. Recordkeeping Servs., LLC,
82 F.4th 61, 64 (1st Cir. 2023).  Under Rule 60(b)(3), the court
may relieve a party from a final judgment for "fraud . . .,
misrepresentation or misconduct by an opposing party."  The

19

moving party "must demonstrate misconduct — such as fraud or misrepresentation — by clear and convincing evidence and show that the misconduct foreclosed full and fair preparation or presentation of her case." Giroux v. Fed. Nat. Mortg. Ass'n, 810 F.3d 103, 108 (1st Cir. 2016) (internal quotation marks omitted).  Review of a decision under Rule 60(b)(3) is for abuse of discretion.  U-Nest Holdings 82 F.4th 63.

The bankruptcy court concluded that the records referred to by the Savages, or some of them, were moved to the business condominium where Sky-Skan previously operated, and that the trustee in Sky-Skan's Chapter 7 case told Coastal that any records or documents that Coastal did not remove would be destroyed.  Based on the record in the Sky-Skan case, the bankruptcy court determined that the Sky-Skan trustee sought authority to destroy records on June 10, 2021, which was granted in August, with permission given to Coastal to take records before August 18, with certain requirements.  The Savages and their counsel were served with the motion and the order, and they were aware of those proceedings.  The Savages did not object or seek to appeal the order.

Discovery in the adversary proceeding did not close until January 31, 2022, but the Savages propounded no discovery requests.  Nor did they otherwise seek access to any of the Sky-Skan records that Coastal possessed or had access to after

20

August 18.  For that reason, Coastal had no obligation to
supplement discovery requests based on the Sky-Skan records.
The bankruptcy court found that the Savages had not shown any
misconduct by Coastal with respect to the Sky-Skan records.

On appeal, the Savages argue that Coastal improperly denied
them access to the Sky-Skan records.  In support, they assert,
without evidence, that they tried to get the records at Sky-
Skan's office, but their key did not work.  When they contacted
Coastal's counsel, the response was that discovery was closed.

The Savages provide no detail about when they attempted to
enter the office, which apparently was under the control of the
Sky-Skan trustee.  They do not explain why they did not seek
discovery in the adversary proceeding or why they did not
contact the Sky-Skan trustee about the records.  They have not
provided any evidence of misconduct by Coastal, much less clear
and convincing evidence of misconduct.

The Savages also made no proffer about what they expected
the Sky-Skan records to show.  For that reason, they have not
shown that the Sky-Skan records would have assisted in their
explanation of the unaccounted-for money.  Further, as the
bankruptcy court noted, the Savages' theory that the absence of
the Sky-Skan records prevented them from providing a
satisfactory explanation is inconsistent with their theory that

their Schedule J explained what happened to the unaccounted-for money.

The Savages have not shown that the bankruptcy court abused its discretion in denying them relief under Rule 60(b)(3).

E.  <u>Partial Discharge</u>

In the Savages' final challenge to the bankruptcy court's decision, they argue that a discharge should have been denied only to the extent of the unaccounted-for money.  They rely on cases that address settlement of § 727(a)(5) claims to contend that because the United States Trustee and the Chapter 7 Trustee did not object to discharge, denial of discharge should be limited.

The Savages did not raise their novel theory for a partial discharge in the bankruptcy court, and for that reason it is not properly before this court on appeal.  <u>In re Cruz Rivera</u>, 600 B.R. 132, 142-43 (B.A.P. 1st Cir. 2019); <u>In re U Lock, Inc.</u>, No. BR 22-20823, 2024 WL 4476492, at *4 (W.D. Pa. Oct. 11, 2024). In the absence of persuasive authority, or a reason to overlook the "raise or waive" rule, the court declines to overturn the bankruptcy court decision based on a theory that was not previously raised.

Even if the partial discharge theory had been properly presented, it would not succeed.  The language of § 727(a)(5)

22

provides grounds to deny discharge, without any suggestion that
there might be a partial denial.  The Savages cite no case or
other authority to support an interpretation of § 727(a)(5)
requiring a limited denial of discharge given the circumstances
that exist in this case.  Therefore, the Savages provide no
grounds to reverse the bankruptcy court's decision to deny them
discharges, based on their partial discharge theory.


    F.  <u>Equitable Principles</u>

The Savages invoke equitable considerations that underly
bankruptcy protection to support each of their theories of
relief from the bankruptcy court's decision, and argue that they
should be allowed a full discharge.  They cite <u>In re Hannon</u>, 839
F.3d 63, 70 (1st Cir. 2016), where the court stated that "the
statutory right to a discharge should ordinarily be construed
liberally in favor of the debtor" in the context of an objection
to discharge under § 727(a)(4).  In contrast, "[s]ection
727(a)(5) is broadly drawn and gives the bankruptcy court broad
power to decline to grant a discharge in bankruptcy when the
debtor does not adequately explain a shortage, loss, or
disappearance of assets."  <u>In re Aoki</u>, 323 B.R. at 817.

The court is satisfied that the bankruptcy court fully
considered equitable principles and the material circumstances

presented by the Savages in concluding that they were not entitled to a discharge under § 727(a)(5).

## Conclusion

For the foregoing reasons, the bankruptcy court's decision denying the Savages a discharge, pursuant to § 727(a)(5), is affirmed.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 13, 2025

cc:  Counsel of Record